Case number 4-17-0027, People v. Willing, and for the appellant is Attorney Lovelace, and for the appellee is Attorney Willings. Good morning. Mr. Lovelace, are you ready to proceed? I am, Your Honor. You may. Your Honors, may it please the Court, Counsel, thank you for the opportunity to be here today and speak on behalf of my client, Rusty Willing. Mr. Willing is a 36-year-old father of two. He's a brother, a son, an uncle to lots of nieces and nephews. On January 6th of 2017, he was sentenced to 30 years in prison. A jury found Rusty guilty of predatory criminal sexual assault. Specifically, the jury found Rusty committed an act of contact, however slight, between the sex organ of BKL and Rusty's hand, and for the purpose of sexual gratification or arousal of BKL or Rusty. But BKL's testimony at trial was, one, Rusty tried to touch my hoo-ha. Two, he didn't get his hand in her pants. And three, he didn't touch her hoo-ha. Yet this jury found he touched her hoo-ha. A jury said that the state met their burden of proof. I would like to first address this burden, which goes to our claim of insufficient evidence. By the way, on that point, it might be a technical thing, but nonetheless, you argue that the trial court erred by denying the motion for directed verdict. Why is that the argument as opposed to the evidence of simply insufficient to sustain the guilty verdict, which is a fairly standard argument that we see and the standards are appropriate. Jackson versus Virginia, crediting reasonable jury and so forth. So I'm wondering why would you talk about the motion for directed verdict as opposed to just arguing that the evidence is insufficient. After reading the state's brief, Your Honor, I think that is a very good question, and I considered it and addressed it in our reply brief. I think there is maybe an issue as to the motion for directed verdict and the evidence the judge had at the time that defense counsel raised that motion. That motion was obviously raised at a time that the defendant had not put on any evidence, including his own testimony. So the reason I make that argument is that at the time that that motion was made, we would have only had the information that the state provided, primarily the testimony from the only witness, which is BKL. And I believe that the evidence at that point was insufficient. I know the state talks about if the defendant then goes on to introduce evidence, somehow that's wasted. Either way, I think we ultimately end up with what the court has already indicated. It's the same standard. There may be a timing issue in what this court should consider to be the evidence at different points in the trial. Okay, go ahead. In our reply brief, we acknowledge that the state's position on the law, that the defendant's intent arises to arouse and gratify himself sexually can be inferred solely from the nature of the act. BKL testified that when she woke up, Rusty was trying to reach under her pants, and she said he was looking for a remote control. If that is what happened, and that's the information we would have had when the defense counsel raised the motion for a directive verdict, taking her statements as true, you cannot infer that Rusty was trying to arouse or gratify himself. BKL testified that the TV was on the night it happened. Whether there was a remote to that TV or not, surely gratification and arousal cannot be inferred from a person searching a child's bed for an object and coming close but not touching the sex organ. Surely more evidence is required to convict a man of such a crime that carried a sentence of 30 years in prison. The appellant in this case testified, and he denied that he touched BKL's sex organ. He testified that he did not engage in any inappropriate activity or conduct or touch BKL in any way. He never went in her room to turn off the television, nor did he spend any time alone with her. In addressing the contact element, the same testimony shows that the state did not present evidence sufficient to convict. Of course, the state, both the trial and now here on appeal, points to the CAC interview video in support of the jury's decision. This hearsay was admitted, we contend, in error, which I will address later. If you examine the video closely, and we would ask that you do so, it shows that BKL did not say that Rusty touched her sex organ. At the 1550 mark, Baldwin, Brooke Baldwin, who was the CAC interviewer, broke her own rule and started to lead BKL, or the witness in this case. Specifically, Baldwin asked, do you have a name for the body part that his hand was touching? Up until that point in the interview, the court would say that BKL had never claimed that Rusty touched her, only that he had tried to touch her. But now, after that leading question, that assumed touch, she stated, BKL stated, I call it my monkey. From there, the leading questions continued. Was it, and this is Brooke Baldwin, was it touching the inside or the outside? That gives BKL no option other than to say the outside. The state calls this a natural progression of questions. The goal in these interviews, which are critical in these cases, because they are admitted more often than not, and the jury gets to see these interviews, the goal in these interviews is to obtain the truth. An adult may be in a position to stop the interviewer and say, hey, I didn't say that. It's not an either or question. He didn't touch either the outside or the inside. But a child is very susceptible, a young child, with the interviewer, to agreeing with the interviewer, or in this case, as discussed in our reply brief, pleasing the interviewer. There's evidence in that video to indicate that BKL very much wanted to please that interviewer because of some commonality. They had the same name that was mentioned. They both had the same first name. And also, at the end, you can see where the interviewer leaves to meet with people, which is common in these cases, and BKL remains in the room drawing a picture of the interviewer and actually stays late so she can finish the picture so she can give it to the interviewer. That shows that there was some sort of bond there and she did want to please the interviewer. BKL is the only person who the jury could have considered in making their decision to convict. The Illinois Supreme Court in Smith recognized that a testimony of a single witness is sufficient to convict if positive and credible. But where there are serious inconsistencies and the repeated improvement of the witness, the appellate court can find no reasonable prior fact could have found the testimony credible. And here we have internal inconsistencies. There is no doubt that there is a serious inconsistency between BKL's testimony at trial and the video. We ask that this court review this video closely and consider the impact of the interviewer, Brooke Baldwin, on the content of this video, which the jury saw. This court, being able to recognize the reliability of this video, should disregard it and in doing so can find that there was insufficient evidence to convict Rusty Willing of this crime. We have a lot of cases dealing with the invisibility of testimony under 115-10 and in a great many of them we've dealt with situations in which the testimony at trial was different or might be viewed as less than the testimony in the statements of third parties. The trial court has deemed admissible pursuant to the statutory criteria of section 115-10. You seem to be arguing that an inconsistency undermines the admissibility of the statement in the first instance and also its credibility of these hearsay statements for the jury's determination. But haven't both those ships long since sailed that these are just matters for the trial court to determine? After all, if the statements were the same, we'd just be dealing with prior consistent statements, but typically that's not the case at all, is it? Yes, Your Honor. In fact, I think the state in citing this court's decision in ALERA tries to make that point. I think that's the point Your Honor is making. And I think that case, although this court determined that there wasn't an inconsistency and allowed the video to be played to the jury and the court did not reverse the trial court's decision and the verdict in that case, I think the court in ALERA illustrates what went wrong in that case. So if I might address that issue. Sure, go ahead. In that case, there's an example of the trial judge's independent analysis during a trial proceeding after a child is testified and before the video was played. The state in its brief argues that the trial judge, who was not the same judge who ruled on the admissibility, so that may be a unique fact in this case, didn't have the responsibility to consider counsel's objection at trial. In fact, appellee's brief, page 21, suggests that such an argument is preposterous. But in ALERA, this court reviewed a case where the trial judge heard after a child testified arguments outside the presence of the jury regarding the admissibility of a videotaped statement that it had previously ruled admissible. And that's what should have happened here, Your Honor. Well, I can't remember for sure the name of the case. I think it was People v. Sharp. It's one I wrote 12 years ago in which there was a situation where an 11-year-old girl, I think, claimed that she was sexually assaulted in the Farmer City Fairgrounds in a projection booth on the fairgrounds and gave statements to that effect during the course of the investigation. She was called to testify at trial and literally testified fully and freely. And then the question was, so what happened when you got to the fairgrounds? And the record shows silence, nothing, no response at all. And several efforts made even to lead the witness, no response. And then the record shows, well, after that, what happened then? And then she started testifying again. And there was a motion to bar the Section 115-10 statements, there were two or three of them, to third parties, which the court had ruled were going to be admissible, in which it described in some detail what had happened. And the issue was she needs to testify from the witness stand. Not only was it inconsistent, there was literally no testimony at all. And therefore, these 115-10 statements were no longer admissible. Confrontation clause, all these other arguments, the trial court rejected it and this court affirmed. Isn't the argument you're just now making essentially a revisitation of that same claim that was made in that case? I don't remember the facts of the Sharp case. I do recall reviewing that case and preparing the brief, and I do believe it's different. In this case, the court, in the Lehrer case, the court reviewed the videotape and held that the child's testimony was not so much inconsistent with the videotape statement, but it was less complete than the previous statement, which I guess is maybe a little bit similar to what this court did. Well, in Sharp, it could not have been less. There was nothing. There was literally nothing. Now, if it was admissible and there's nothing, why would it be inadmissible if there were discrepancies? Well, in the Sharp case, and I'm going to have to make an assumption that the trial court addressed those motions, but in that lies the problem here. The trial court refused to even consider the objection. The trial court rejected it after the witness, and I should mention, by the way, this was an important fact, the witness was cross-examined, but not cross-examined by the defendant as to what happened in the projection, but was crossing out about other stuff, and the witness responded. So we didn't have the issue where the witness wouldn't respond to the defense questions. We don't have that issue here either, do we? No. The witness did respond. Yeah, but what we do have is completely inconsistent statements, which we believe that should have triggered the trial court to at least consider the objection. I mean, the issue here – What would be the objection? You determined that this was to be admissible at the time, but based upon what she's now said, the 115-10 statements are no longer admissible? Yes, that now you have inconsistency that the previous judge did not have an opportunity to view. So it's later in time. I'm not saying if the trial court in this situation, the new judge who had not heard anything and would appear from the record to not have considered any of that or knew about it, or just knew that, hey, there were pretrial rulings and we're going to, and I'll just abide by those pretrial rulings. That's what the court says on the record. That creates the arbitrary nature of the decision. The court in Lara pointed out in affirming the trial court's decision, and that trial court's decision actually considered the evidence. He actually took arguments and made a decision, this court determined a reasoned decision, that the interviewer asked open-ended questions. So the court actually recognized, hey, I saw the video before. They asked open-ended questions. The witness testified during the video in response to those open-ended questions. We don't have that here. We have leading questions that led BKL to make her statements. And the child described in the Lara case how the defendant's actions actually felt. There were descriptive terms to lend credibility and reliability to that videotape testimony. That's not the case here. The witness is merely agreeing. Surely she could have stated during the interview that that. Well, one other aspect that counsel, this court has written a few times, I believe, the determination of whether or not the trial court erred by granting a motion for testifying under Section 115-10 should be based upon the evidence presented then. Subsequently, that ruling shouldn't be second-guessed or supported by testimony that comes out later on. Why wouldn't that be something we should follow here? Namely, based upon what the trial judge heard at the time this matter was litigated, should these statements be admissible under 115-10? That should be the focus of our inquiry and not whether there was consistency or inconsistency with trial testimony. But the trial judge in this case didn't do that. The objection was made, and he overruled the objection.  But that's at trial. At trial. Yeah, well, but essentially, and I think it was people versus back by this case, aren't we reviewing what was before the trial court at the time it made its determination that the statements were sufficiently trustworthy and reliable under 115-10 at that hearing? And that's it. That is, subsequent events don't either add to or detract from the ruling made at the hearing on that motion. You seem to be saying that, well, this is a tentative ruling, depending on what happens at trial. I'm suggesting that we rejected that, didn't we? It wasn't necessarily a tentative ruling, but the trial court had the duty to at least address arguments of counsel, and his decision to overrule the objection was arbitrary because he didn't take anything into consideration. The trial judge in this case overruled the objection without hearing anything. But the only thing that was not before were subsequent events where there was an inconsistency, but this is kind of built into the whole purpose of 115-10, that it might be inconsistent. The appellant in this case is arguing that the court's review of the situation should not stop just at the 115-10 hearing, that the trial court has an obligation. If there is new information presented by the witness, in this case completely inconsistent statements, the court should at least take that into consideration in making its ruling. Why should the court? Why should that event affect upon the appropriateness, which is to be reviewed by discretionary call and admissibility of evidence, of what the court said when it conducted the hearing on 115-10? Because now you have an additional statement by the victim in this case, BKL, that creates inconsistency. That additional statement, if she had made it, if she had told someone else, hey, you know, he didn't touch me, and that was presented at the 115-10, the court should have considered that then. Here, now we're at the trial court, and she's telling someone else, in this case the jury, that it didn't happen, and the court should consider that and look back and say, now wait a minute, why didn't she, why did she say something different in the interview? If the court would have reviewed that video, it could have made a determination and should have made a determination that there was inconsistency. And I believe my time's up. I imagine after rebuttal there might be an opportunity to address some of the other issues. All right, thank you. Mr. Williams. May it please the court, counsel, my name is James Ryan Williams, and in lieu of Ms. Erin Wilson-Lagler, I'm appearing on behalf of the state appellate prosecutor, and it's my privilege to represent the people of Illinois before this honorable court. With respect to the first two arguments here, the directed verdict, the judgment notwithstanding the verdict and the sufficiency of the evidence, as your honor pointed out, these are essentially all governed by the same standard of review on appeal, and that requires the court to review the evidence in the light most favorable to the state. So given the similarity of these standards, I will just address these arguments together. Now here, initially, the defendant in his opening brief only challenges the element of contact, however slight. I'll note that in the reply brief, he challenged the sexual gratification element. To that end, I would first argue that that challenge has been waived because it was not argued in the opening brief. And in any event, I'll note that the element of sexual gratification can be inferred based on the circumstances of the offense. That, of course, is when it's involving a child victim and an adult. And here, we have an adult who is reaching his hand inside the pants of a nine-year-old girl. Now, a lot of time has been spent today. Essentially, most of the initial argument here has been devoted to the inconsistency between the video-recorded interview and the later trial testimony. And Mr. Williams, I know you're going to spend time talking about that. One thing that we didn't talk about during Mr. Loves' portion of the argument was the motion for mistrial. Just so that it makes sure that you address that here, you cite the Bishop case and say that the same outcome should apply here, right? Why is it that you think Bishop controls here, where Bishop, it related to the jury being informed that the defendant had been in jail, whereas here, the jury was informed that the defendant had been in prison? Isn't that worse? I guess in that way, it's worse. And I guess that's assuming that the defendant there was factually accurate that he had, in fact, only been in jail versus prison. But that's what the jury heard. The jury heard prison here, jail there. You don't have to be a lawyer to understand that prison is where people convicted of serious crimes go. Jail is where you might be picked up overnight for broken behavior or something less serious. That's correct, Your Honor. First of all, the state's initial position would be that the curative instruction here to disregard that, standing alone, should have been sufficient to cure any concerns for prejudice. And here, the jury acknowledged that they understood that they could not consider that. And then additionally, the fact that the defendant here subsequently testified. Well, Mr. Loveless wasn't asked about any of this stuff, but I want to ask you because these are the concerns that I have in this case. The first is the record shows that four minutes into her testimony, Stephanie said she started dating the defendant, quote, right after he got out of prison, unquote. The defendant, of course, objected. And then there was a discussion. Now, you're looking at a panel that has combined about 35 years, something like that, worth of trial court experience or sympathies with the trial judge. We understand the dynamics of trial. This is bad stuff. This is the first witness four minutes into her testimony. Why not just grant them this trial and start all over, given he just got out of prison? I mean, this is not something that jurors ought to know as they're evaluating this guy. You know, a point that needs to be reemphasized, he may be guilty. He may be guilty as hell, but everyone's entitled to a fair trial. And this is a real problem on the question of did he get a fair trial. Why shouldn't a motion for mistrial have been granted like that? Let's start over. And don't do this no more know-how, Ms. Stephanie. And let's control your witness a little bit better, Mr. Prosecutor. What about that? Well, to that end, Your Honor, I mean, I would note that this seemed to be a very unexpected response to a very standard question. I don't believe that anything in the testimony suggests that this was in any way elicited by the state. That's right. This is the first witness, four minutes into it, four pages, four minutes into her testimony. Why not just do it all over? Why is this an issue? And shouldn't we maybe communicate to the trial court this was an issue? Given our obligation as judges to ensure people get fair trials, and given that this was, let's call it, volunteered information by a witness who maybe did it inadvertently or not, doesn't matter, it adversely affected this guy's right to a fair trial, doesn't it? And, you know, when I say experienced trial judge, if this had been the third week of trial, I could see scratching my head and saying, oh, gee, you know, what can we do to salvage this so we don't have to do it all over again? Four minutes into the first witness, what's the salvage? I understand your concerns, Your Honor. I would note that separately there was the pre-trial motion of limine that did allow the state to permit or present evidence of the prior conviction resulting in imprisonment if the defendant elected to testify. And here the defendant did ultimately elect to testify. To that end, the state's position is that would render any issue with this moot, and the convictions themselves would be otherwise admissible because of his decision to testify. Well, but see, that's the problem. Defendants have the right to choose whether to testify or not. And if he has prior convictions, that's one of the aspects I know from having been a trial judge, that the defendants weigh, gee, you know, if I testify, they're advised, then your prior convictions may come on out. Maybe you don't want to testify. And frequently good advice from defense counsel to their clients, who ultimately have the right to decide, is I don't think it's a good idea for you to testify. Well, the judge says, well, it's going to come out anyway when he testifies that he was in prison. Well, first of all, that's incorrect. The question before the jury, assuming the defendant testifies, is to bring out whether he has a prior felony conviction. The jury isn't told what his sentence was on that prior felony conviction. And it might very well be, for all the jury knows, he has this prior felony conviction for aggravated murder or whatever and received probation. And again, you don't have to be an experienced criminal defense lawyer to know that if someone has a prior felony, that probation is the norm. Most people go to prison if it's a serious crime of violence or a repeat offense. So what's he doing in prison? Just one more prejudicial bad thing, the jury is told that they shouldn't have been told. What about that? Well, to that end, Your Honor, I mean, the defendant here was given the option to inform the jury of the nature of the prior conviction, to avoid any such speculation. And again, those did later ultimately come in after he elected to testify. So the jury wasn't left to speculate as to what the nature of those prior convictions were. Mr. Williams, you were at the trial counsel, so please forgive me. I'm not questioning you. I'm just questioning what happened here at the trial, what the prosecutor did. More significantly, and let me address it directly, Mr. Lovis argues that this case is very similar to Bowen, where this court wrote, I wrote, a rather extensive discussion about, you know, you don't have to explain why a parent might ask a child, has anyone ever touched you inappropriately? You don't have to explain the motivation for that. This is the kind of question that I think most jurors would understand a lot of parents would be asking of daughters at eight or ten years old. Without being told, as Stephanie was allowed to testify, she had a conversation with the father that the defendant, quote, had been in trouble previously for molesting a little girl, unquote. How can that possibly be admissible, and why isn't it just so prejudicial, leaving aside the being in prison business, which you and I very well connect with. That's why he was in prison for molesting a little girl. How can we be satisfied that this defendant received a fair trial with that testimony having been admitted? Well, I mean, I think that this case is distinguishable from Bowling in a couple of ways. Here we're only dealing with a single statement, and it's used for the very limited purpose of explaining why the mother initiated the conversation about this particular individual. Pausing right there, what was the need for the mother to explain why she initiated that conversation? She was explaining why it was that she was asking her daughter about this particular individual. Her daughter was eight years old at the time? I'm sorry? Her daughter was eight years old at the time? Correct. So she asked to explain, gee, why would you have a conversation with your daughter about, has anyone ever touched you inappropriately? And the justification for that conversation is that she was told by her father that the defendant, quote, had been in trouble previously for molesting a little girl? I mean, when you balance the probative value against the potential prejudicial effect, what need was there to explain this versus this massive prejudicial effect? I mean, the central theory of the defense here was that the victim had bias, and more importantly, that she was motivated to fabricate these particular allegations. And so it seems that for that reason, independently. By victim you mean, what's her initials, BK? I believe that's accurate, Your Honor. BKL. That she had the bias or that Stephanie, her mother, had the bias? Well, it seemed that that bias was imputed to the victim, that this was, the suggestion here it seemed was that this was an act of vengeance. There was a retaliatory motive in suggesting, in bringing these allegations out, and this explanation seemed like it was pertinent to explain that, you know, there was good faith in bringing the allegations, and most importantly, again, rebutting really the central theory of the defense here, that this was. . . Well, Mr. Williams, it was literally 28 years ago, this court wrote the case of People v. Cameron, which was discussed in Bowling, talking about how the state constantly is using this claim of, we need to explain the course of this investigation, or why the police did what they did. And as explained in Bowling, to the extent that is even legitimate, which has some legitimacy, it's that much more reduced when we're not talking about police investigation, but just inquiries from parents. But even then, 28 years ago, this court said, you know, here's the thing. If you're going to try to use this, present information to the jury about this subject, there should be a determination by the trial court as to both the need and the extent of this information to explain to the jury why the police did what they did. So if assuming, and I'm hopeful that before I die, having been involved in Cameron, that there might be a prosecutor somewhere who will be aware of this and say, you know, Judge, we're going to offer this evidence, and the Fourth District has said in a dozen cases, maybe 15, whatever, that there should be a hearing pursuant to People v. Cameron to decide these things. So we're calling it to your attention now so you can decide both the necessity and the extent of this evidence, and here's our position on what you should do. For instance, in this case, maybe the judge would have said, okay, Stephanie needs to explain why she talked to her daughter, BKL, about this, and I'm going to permit her to say, I had a conversation with my father about the defendant, and then I talked to BKL. Now, frankly, I'm not sure that that's legitimate, or if I'm the trial judge, I'm going to buy it, but that would have been rather as much as the state would have been entitled to at all, as opposed to Stephanie had a conversation with her father that the defendant, quote, had been in trouble previously for molesting a little girl, in a case in which he's on trial for molesting a little girl, in which the state had already brought out, inadvertently perhaps, to its witness, who clearly was biased. I mean, that was well established and appropriately so, Stephanie, that he had been in prison, a fact, again, that had no legitimate basis to be before the jury. So, given all of this, given that there was no Cameron hearing, given that this was no discussion, why shouldn't our decision in this case be the same as it was in Bowling, saying, this guy didn't get a fair trial. He may very well be guilty, but guilty or not, he's entitled to a fair trial, and the jury, in deciding this case, shouldn't be told extraneous, unnecessary, seriously prejudicial things, as they were here. Well, Your Honor, I think at the end of the day, this is ultimately a harmless error, because the evidence establishes the requisite elements of, again, the only contested element here being the contact, however slight, and because that evidence has been established by otherwise admissible evidence, the state's position is that the error here is ultimately harmless. Unless this Court has further questions. Thank you for your time, Your Honor. All right. Thank you, Mr. Williams. Mr. Loveless, rebuttal argument? Yes, Your Honor. As the Court has already pointed out, the defendant has raised in this case, the appellant has raised this issue of this previous allegation against the defendant, and the Court has recognized that the prosecutor has some obligation here, and I realize at the first statement, which is we started dating after he got out of prison, was extremely prejudicial, and the prosecutor in that case said, hey, that was not responsive, I didn't know she was going to say that. Which might very well be true, at which point, four minutes into it, the Court can say, you're right, let's do it over, let's start again. I would agree with that, Your Honor, but I would also add to it that, given the history of this witness in this case, and again, we have this break between the judge who heard the pre-trial motions and the 11510. Who was that judge? The judge that heard that was Judge Scott Larson, and the judge who handled the actual trial was Judge Butler. So Judge Butler didn't know anything about Ms. Carr, but he didn't do anything to address the problems that she was creating. First of all, as Your Honor pointed out, the opportunity to declare a mistrial, and defense counsel, in argument on the mistrial, warned the Court, and tried to explain to the Court, defense counsel stated, that this witness will take every opportunity she can to get every bit of the testimony she can get in regard to 94, which was the juvenile matter that she was referring to, that allegedly her father mentioned to her, and every chance that she can get into the 2009 matter. Now the Court did hear, and I think the State argues in their brief, that there was essentially some sort of Cameron hearing, because there was a motion to exclude the evidence, and the appellant in this case wants to recognize that. But as the Court already indicated... The key in the Cameron hearing are the words, the necessity and extent. I don't recall anyone talking about that. And I agree, Your Honor, and I believe Judge Larson recognized, if you read the transcript of that hearing, he may have maybe inartfully recognized the concerns about this witness, and told everyone to be careful. It's a diplomatic way of putting it. But he did not confine the scope and say, okay, as the Court indicated, she can say this, but not this. So the Court should have declared a missed trial, as this Court has already indicated that it may agree with. Or the Court could have barred the witness, and at least kept any further damage, or admonished the witness in some sort of way. But that's not what the Court did in this case. The Court says really nothing. And when Defense Counsel brings up the fact that, hey, I've got concerns about this witness moving forward, the Court says, well, that's irrelevant at this point in time. I'm not going to bar her from testifying or anything. And so what happens next is not only the people versus bowling situation. I would argue that it's worse than bowling. I mean, there wasn't a subtle or merely suggestive... It is. ...suggestive situation in that case. And I believe the State also tries to differentiate that there's only one witness testifying, whereas in the bowling case there were two witnesses. But if the Court looks at the video that was played to the jury, also BKL talks about her mom having a conversation with her about, then she believed me once she found out something that Rusty had done or she knew. So there is even that additional witness in that case. Your Honor, although the Court in this case did offer a limiting instruction, it's not enough. Once those words were said coupled with that he had been to prison, the jury can't disregard both of those. And mixing those together and say he molested a little girl and he went to prison, combined they create such a prejudicial situation that they cannot recover from. And that's why this is not harmless, Your Honor. Based upon that error and the other errors discussed in Rusty's brief, we ask that you reverse this conviction. Thank you. All right. Thank you, counsel. Thank you both. The case will be taken under advisement.